Toby L. Gerber (SBT 07813700)
Ryan E. Manns (SBT 24041391)
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

Counsel for Credit Union Liquidity Services, LLC
f/k/a Texans Commercial Capital, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| IN RE: § | |
| § | Case No. 10-31171-SGJ-11 |
| MARIAH BAY LEASING § | |
| CORPORATION § | |
| § | CHAPTER 11 |
| DEBTOR. § | |

### CREDIT UNION LIQUIDITY SERVICES, LLC'S MOTION FOR ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. § 362(D), GRANTING CREDIT UNION LIQUIDITY SERVICES, LLC RELIEF FROM THE AUTOMATIC STAY

COMES NOW Credit Union Liquidity Services, LLC ("CULS"), f/k/a Texans Commercial Capital, LLC, and files this Motion for Entry of an Order, Pursuant to 11 § U.S.C. 362(d), Granting CULS Relief from the Automatic Stay (the "Motion"). In support of this Motion, CULS respectfully states as follows:

> **PURSUANT TO LOCAL BANKRUPTCY RULE 4001.1(b), YOU MUST FILE AN ANSWER TO THIS MOTION WITHIN TWELVE DAYS (12) DAYS OF THE DATE INDICATED IN THE CERTIFICATE OF SERVICE OF THIS MOTION. IF YOU DO NOT FILE AN ANSWER AS REQUIRED, THE ALLEGATIONS IN THIS MOTION SHALL BE DEEMED ADMITTED, UNLESS GOOD CAUSE IS SHOWN WHY THESE ALLEGATIONS SHOULD NOT BE ADMITTED, AN ORDER GRANTING THE RELIEF SOUGHT BY THIS MOTION MAY BE ENTERED BY DEFAULT.**

## I. PRELIMINARY STATEMENT

1. Over ninety (90) days have elapsed since the commencement of this bankruptcy case (the "Bankruptcy Case"), and Mariah Bay Leasing Corporation ("Mariah Bay" or the "Debtor") has not filed a plan of reorganization that demonstrates a reasonable possibility of being confirmed within a reasonable time and does not have the wherewithal to make monthly payments in an amount equal to interest at the applicable nondefault contract rate of interest. The Debtor's proposed plan of reorganization (the "Plan") cannot be confirmed because it is not feasible and because the Debtor does not have the ability to restructure its debts. Specifically, the Plan contemplates a substantially unsupported proposal to satisfy the secured debt after plan confirmation.

2. The Plan is premised upon the Debtor's pure speculation that the economic climate will improve upon its emergence from bankruptcy. Indeed, as an indicator that the Plan is not feasible, the Debtor has conceded that it anticipates that it will be unable to service its debt payments to CULS during the lease-up period post-confirmation. Notwithstanding the Debtor's overly optimistic financial projections, the Debtor has not provided any reliable evidence that demonstrates an ability to reorganize its financial affairs in the foreseeable future. Taking into consideration the Debtor's historical revenue and the Debtor's meager performance in bankruptcy, the Debtor's financial projections fail to demonstrate or establish that it can satisfy its debt service, delinquent tax payments and monthly operating expenses (or, for that matter, all of its Plan payments) post-confirmation.

3. The Debtor is currently using CULS's collateral to prolong the inevitable. CULS holds a $28,526,383 claim against the Debtor, which represents approximately 97.3% of all of the claims held by all of the parties against the Debtor. Thus, despite the Debtor's classification of eight (8) separate classes of claims in the Plan, in reality, this is a two-party dispute.

4.　For all of the reasons discussed herein, CULS is entitled to relief from the automatic stay so it may exercise its rights under the Loan Documents (as hereinafter defined).

## II. JURISDICTION AND VENUE

5.　This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1334 and 157. Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## III. FACTUAL AND PROCEDURAL BACKGROUND

### A.　The Debtor's Sole Asset

6.　The Debtor's primary asset is an approximately 123,736 – square foot lifestyle center located on the eastern bank of Lake Ray Hubbard (the "Harbor Property"). The Debtor's revenue is generated by its rental of Harbor Property commercial leases.

### B.　The Debtor's Pre-Petition Indebtedness

7.　The Debtor is indebted to CULS pursuant to the Loan Agreement dated as of December 27, 2006 (as amended, supplemented or otherwise modified, the "Loan Agreement"), among Mariah Bay and CULS. Mariah Bay executed and delivered to CULS that certain note in the face amount of $31,000,000 payable to CULS (as amended or modified, the "Note"). All such loans, financial accommodations and other amounts owing by the Debtor to CULS under, or in connection with, the Loan Agreement and the other collateral and ancillary documentation executed in connection therewith (as amended, supplemented or otherwise modified, are hereinafter referred to as the "Loan Documents").[1]

8.　As a result of the aforementioned secured financing transaction, CULS has a first lien on the Harbor Property and all rents, proceeds, and profits that are generated by the Harbor Property, including all cash collateral of the Debtor. All such liens and interests of CULS have

---

[1] Affidavit of Bryan Petska ("Petska Aff.") ¶¶ 4-5, 11; Ex. 2-3.

been preserved and continued post-petition by the interim and final orders authorizing the use of cash collateral. *See* Final Agreed Order Authorizing Use of Cash Collateral and Granting Adequate Protection to Credit Union Liquidity Services, LLC [Dkt No. 36], ¶12.

C.   **The Debtor's Default Under the Note**

9.   Pre-petition, Mariah Bay defaulted multiple times under the Note by failing to make payments when due.[2] Mariah Bay failed to make a payment of $197,805.66 that was due and payable under the Note on September 1, 2009.[3] Notice of said default was provided on September 17, 2009.[4] After the expiration of five (5) days from such payment due date, without payment by Mariah Bay, an Event of Default (as defined in the Loan Documents) occurred.[5]

10.   Mariah Bay again defaulted under the Note by failing to make a payment of $197,805.66 that was due and payable under the Note on October 1, 2009.[6] After the expiration of five (5) days from such payment due date, without payment by Mariah Bay, an Event of Default (as defined in the Loan Documents) occurred.[7] Notice of said default was provided on October 15, 2009.[8]

11.   Mariah Bay again defaulted under the Note by failing to make a payment of $197,805.66 that was due and payable under the Note on December 1, 2009.[9] Because of Mariah Bay's failure to timely make the payment due on December 1, 2009, was the third instance of such failure to pay within a rolling twelve (12) month period, CULS was not required to give notice and an Event of Default occurred and is continuing.[10]

---

[2] Petska Aff. ¶¶ 14-16.
[3] Petska Aff. ¶ 14; Ex. 10.
[4] Petska Aff. ¶ 14; Ex. 10.
[5] Petska Aff. ¶ 14.
[6] Petska Aff. ¶ 15; Ex. 11.
[7] Petska Aff. ¶ 15.
[8] Petska Aff. ¶ 15; Ex. 11.
[9] Petska Aff. ¶ 16.
[10] Petska Aff. ¶ 16.

12. On February 18, 2010, CULS, as Plaintiff, filed an Original Petition (the "Original Petition") and Application for Appointment of Receiver and Temporary Restraining Order against Defendants Mariah Bay Leasing Corporation, Whittle Development, Inc. and Robert S. Whittle in Dallas County District Court asserting causes of action consisting of: (a) Breach of Contract – Borrower; (b) Constructive Trust; (c) Breach of Contract – Whittle Development, Inc. and Robert S. Whittle; and (d) Attorneys' Fees.

### D.  Commencement of the Bankruptcy Case

13. Shortly before the scheduled hearing to appoint the receiver, on February 19, 2010 (the "Petition Date"), the Debtor filed for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtor has continued to operate its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. Subsequent to the commencement of the Bankruptcy Case, CULS amended its Original Petition and non-suited Mariah Bay.

14. On March 5, 2010, the Debtor filed an amended petition, designating the Debtor's business as a single asset real estate business as defined in 11 U.S.C. § 101(51B). Accordingly, it is uncontested that this bankruptcy case is a single asset case that falls within the parameters of section 362(d)(3).

15. On May 19, 2010, the Debtor filed the Plan [Dkt. No. 43] and the Disclosure Statement (the "Disclosure Statement") [Dkt. No. 44].

### IV.  RELIEF REQUESTED

16. By this Motion, CULS requests entry of an order, pursuant to 11 U.S.C. § 362(d), granting relief from the automatic stay.

## V. ARGUMENTS AND APPLICABLE AUTHORITY

**A.** **The Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed.**

17. In the context of relief from stay litigation, the analysis for the potential for a successful reorganization is not the same as the standard employed at a confirmation hearing. *Steele v. Cho*, 164 Bankr. 730, 733 (Bankr. E.D. Va. 1994). However, consideration of 11 U.S.C. § 1129 does provide guidance as to the feasibility of the plan. *Id* at 733. "If the proposed plan cannot meet confirmation standards, it cannot form the basis for finding there to be a reasonable possibility of a successful reorganization as required by 11 U.S.C. § 362(d)(3).

**(i)** **The Plan is not feasible.**

18. The purpose of section 362(d)(3) is to address perceived abuses in single asset real estate cases, in which debtors have attempted to delay mortgage foreclosures, even when there is little chance that they can reorganize successfully. *See* Collier on Bankruptcy, ¶ 362.07[5](b) (15th ed. Rev. 2005).[11] Specifically, section 362(d)(3) of the Bankruptcy Code provides as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (3) with respect to a stay of an act against a single asset real estate under subsection (a) by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or thirty days after the court determines that the debtor is subject to this paragraph, whichever is later –

---

[11] S. Rep. No. 168, 103d Cong., 1st Sess. (1993)("This amendment will ensure that the automatic stay provision is not abused, while giving the debtor an opportunity to create a workable plan of reorganization."; 140 Cong. Rec. 10764 (daily ed. October 4, 1994), *reprinted in* App. Pt. 9(b) infra (statements of Rep. Brooks, chairperson of the House Judiciary Committee)("Without bankruptcy reform, companies, creditors, and debtors alike will continue to be placed on endless hold until their rights and obligations are adjudicated under the present system – and that slows down new ventures, new extensions of credit and new investments."; see also *NationsBank, N.A. v. LDN Corp.* (*In re LDN Corp.*), 191 B.R. 320, 327 (Bankr. E.D. Va. 1996)(section 362(d)(3) "was enacted to assist secured creditors in single asset real estate cases.").

(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

(B) the debtor has commenced monthly payments that –

(i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

(ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate;

11 U.S.C. § 362(d)(3).

19. In order to prevail under section 362(d)(3), CULS must demonstrate that within the first ninety (90) days following the Petition Date, the Debtor failed to file a plan that has a reasonable possibility of being confirmed within a reasonable time, and that the Debtor failed to commence interest payments to CULS in an amount equal to the applicable non-default contract rate of interest. Because the Debtor failed to satisfy any of the components of section 362(d)(3), CULS is entitled to relief from stay.

20. In violation of section 362(d)(3)(A), the Debtor has not filed a Plan that has a reasonable possibility of being confirmed. The Plan provides for eight (8) classes ("Classes") of claims: (1) Allowed Administrative Claims; (2) Allowed Secured Tax Claims; Allowed Priority Creditor Claims; (4) Allowed Secured Claim of CULS; (5) Allowed Claims of Tenants; (6) Allowed General Unsecured Non-Insider Claims; (7) Allowed General Unsecured Insider Claims; and (8) Equity Holders in the Debtor. Five Classes, including Class 4, CULS's claim, are impaired under the Plan.

21. The Plan specifically contemplates a modification of the Note's interest rate to 5% and payment of CULS's allowed $28,526,383.34 claim in full. *See* Plan, p.9. The Plan is not feasible for several reasons, including, but not limited to, the fact that the Debtor cannot

satisfy its proposed Plan payments to CULS and the Debtor's other creditors. As previously discussed, the Plan is premised upon the Debtor's pure speculation that the economic climate will improve upon its emergence from bankruptcy.

22. To meet its burden of proof, the debtor must show there is a reasonable expectation that it will present and confirm a plan of reorganization that will result in a successful restructuring within a reasonable period of time. *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd*., 484 U.S. 365, 375-376 (1988); *In re Pegasus Agency, Inc*., 101 F.3d 882 (2nd Cir. 1996); *John Hancock Mutual Life Ins. Co. v. Route 37 Business Park Assoc*., 987 F.2d 154 (3d Cir. 1993).

23. Pursuant to section 1129(a)(11), the Debtor must demonstrate that it has proposed a feasible plan. That is, the Debtor must propose a plan "not likely to be followed by the liquidation, or the need for further financial reorganization." 11 U.S.C. § 1129(a)(11). There must be a reasonable possibility of success "rooted in predictions based on objective fact." *Travelers Ins. Co. v. Pikes Peak Water Co.* (*In re Pikes Peak Water Co.*), 779 F.2d 1456, 1460 (10th Cir. 1985) (quoting *Pizza of Hawaii, Inc. v. Shakey's, Inc.* (*In re Pizza of Hawaii, Inc.*), 761 F.2d 1374, 1382 (9th Cir. 1985)); *see also In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801-02 (5th Cir. 1997).

24. In this case, the Debtor's financial projections are not rooted in objective fact or supported by its historical revenues or its recent performance in bankruptcy.[12] Case law makes it abundantly clear that debtors should not be permitted to remain in bankruptcy in perpetuity, hoping for favorable market changes months or years in the future, while using the automatic stay to frustrate creditors' attempts to recover their collateral. The reasonable probability of success may not be grounded on speculation. *In re Dupell*, 235 B.R. 783, 790 (Bankr. E.D. Pa.

---

[12] Petska Affidavit, ¶17.

1999)(citing *Frankford Trust Co. v. Dublin Props*. (*In re Dublin*, 484 U.S. 365 (1988)). The Debtor has optimistically suggested in the Disclosure Statement that it is "encouraged that it will have leases in place in the summer of 2010 to help fill up some of its vacancies." *See* Disclosure Statement, p.11. "The Debtor sees the Harbor coming to life after the recession passes." *See* Disclosure Statement, p.12. These contentions, no more than the naked hopes of the Debtor, lack evidentiary support. As such, they are impracticable. "However honest in its efforts the debtor may be, and however sincere in its motives, the [Court] is not bound to clog its docket with visionary or impracticable schemes for resuscitation." *In re Northwest Timberline Enters*., 348 B.R. 412, 430 (2006).

25. The Debtor has acknowledged that the Plan is not feasible and that it anticipates that it will fall short of its debt service to CULS in the upcoming months.

> It is anticipated that there will be a period during the lease-up where rent revenues will be less than the amount required to service the [CULS] debt. Therefore, Debtor shall place on deposit $250,000 (such funds to be contributed by the Debtor's equity holders) in a Control Account with CULS on the Effective Date.

*See* Plan, p.15. Feasibility of the Plan, in part, hinges on the Debtor's equity to fund the Plan. The Plan is silent as to the source of the $250,000 that the Debtor's equity proposes to contribute to the reserve account and it is unclear whether the Debtor's equity can make the $250,000 contribution. Moreover, the Plan represents that the "Debtor is also looking for an investment partner to take a portion of the equity in the Debtor in exchange for a cash contribution to assist with funding the Plan. At this time the Plan does not hinge on such contribution." *See* Plan, p. 6. Again, the Debtor has acknowledged the need for outside funding and has not disclosed the source of the funding. Upon information and belief, the Debtor has been searching for an equity investor for several months now to no avail.

26.     To determine feasibility of a plan, courts generally focus on several factors, including, but not limited to: (i) the debtor's earning power; (ii) the economic conditions; (iii) the ability of the debtor's management; and (iv) any other factors which might impact on the ability of the debtor to carry out the provisions of the plan.  *See* Lawrence P. King, Collier on Bankruptcy ¶ 1129.03[11] (15th ed. Rev. 2005); *see also In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 226-27 (Bankr. D. N.J. 2000); *In re WCI Cable, Inc.*, 282 B.R. 457, 486 (Bankr. D. Or. 2002) (acknowledging similar factors); *In re Landmark at Plaza Park, Ltd.*, 7 B.R. 653, 659 (Bankr. D. N.J. 1980); *In re Agawam Creative Marketing Assocs., Inc.*, 63 B.R. 612, 619-20 (Bankr. D. Mass. 1986) (citing similar factors and noting that "[o]ther factors include the prospective availability of credit and whether the debtor will have the ability to meet its requirements for capital expenditures"); *In re Sound Radio, Inc.*, 93 B.R. 849, 856 (Bankr. D. N.J. 1988) (citing similar factors).

27.     Regarding the Debtor's earning power, per the Debtor's 2009 unaudited financial statements, between rent collected, common area, taxes and insurance collected and dumpster payments collected from tenants, the Debtor's reported annual income amounted to $2,641,692.95, approximately $220,141.00 per month.[13]  Conversely, the Debtor projects that its monthly income in the first twelve months upon emergence will average $278,457.97.[14]  As a point of reference, the Debtor's reported income for the month of May was $237,944.32, forty-one thousand dollars less than its projected monthly income in its financial projections.[15]  The economics of the Harbor Property simply do not work.  Moreover, the current economic conditions weigh against the Debtor.

---

[13] *Id.*
[14] *See* Disclosure Statement, Exhibit 2, pp. 1-9.  The $278,457.97 excludes the first month of projected $340,722.47 in net income that includes a $100,000 shareholder contribution
[15] Petska Aff. ¶ 18; Ex. 13.

28. The Debtor's historical revenues illustrate that the Debtor's net cash flow amounted to a negative $121,087.01 in 2009.[16] Notwithstanding the fact that the Debtor "is encouraged that it will have leases in place in the summer of 2010" (*see* Disclosure Statement, p. 11), the Debtor has not provided any concrete evidence that it will be able to lease-up the vacant leases. Furthermore, the Debtor's management has failed to demonstrate an ability to effectively manage the Harbor Property, as evidenced by several prepetition defaults leading up to the Petition Date.[17]

    **(ii)**     **The interest rate provided for in the Plan is wholly unreasonable.**

29. The Debtor has proposed a 5% interest rate on the proposed restructured Note post-confirmation. Given the circumstances of the bankruptcy estate, the proposed interest rate is below market and therefore unacceptable. Under *Till*, the Court must look at the circumstances of this estate, the nature of the security, and the duration and feasibility of the Plan. *Till v. SCS Credit Corp.*, 541 U.S. 465, 479 (2004). In addition, the Supreme Court pointed out that the prime-plus rates depend on the financial markets, the circumstances of the bankruptcy estate, and the characteristics of the loan. *Id.* In the market today, the Debtor would not be able to obtain a loan at the rate suggested in the Plan. CULS will be prepared to show at confirmation that, even if the Court accepts the Debtor's financial representations as true, the Debtor cannot make the required payments, at market rates, under the Plan to CULS.

    **(iii)**     **The Plan violates the absolute priority rule.**

30. The Plan provides that the Debtor's existing equity interest holders shall retain their interests in the Debtor unless otherwise provided for in an investment agreement to fund the Plan. *See* Plan, p. 17. As codified, the absolute priority rule prevents the cramdown of a plan in

---

[16] Petska Aff. ¶ 17; Ex. 12.
[17] Petska Aff. ¶¶ 14-16.

which the holders of a subordinated class of claims or interests, such as equity, retain any property by virtue of their prepetition claims or interests over the objection of a dissenting class with higher priority. *See* 11 U.S.C. § 1129(b)(2)(B)(ii); *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999). "[T]here is 'little doubt that a reorganization plan in which [a junior class] retains an equity interest' is contrary to" the absolute priority rule when senior classes are not paid in full. *See Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 521 (5th Cir. 2004) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202-03 (1988); *Citicorp Real Estate v. PWA, Inc. (In re Georgetown Bldg. Assocs.)*, 240 B.R. 124, 138 (Bankr. D.D.C. 1999)).

31. Despite this prohibition, the Plan provides that Class Eight claim holders (the Equity Interest Holders) will retain their interests in the Debtor, even though unsecured creditors likely will not be paid in full and CULS's secured claim is subjected to an interest rate below the market rate such that CULS is deprived of the true value of its claim. The Plan purports to allow equity to retain its interests while more senior creditors are forced to take significant reductions on their claims. As a result, the Plan violates the absolute priority rule. The Plan's only chance at confirmation, therefore, would be over the objection of CULS pursuant to the provisions of section 1129(b). Because the Plan violates the absolute priority rule, however, it cannot be confirmed over these objections.

### B. The Debtor has not commenced monthly payments at the applicable nondefault contract rate of interest

32. Compliance with section 362(d)(3), and the requirement that the Debtor commence monthly payments at the applicable nondefault contract rate of interest, demands for the stay to be lifted. Section 362(d)(3) requires the Debtor to "commence monthly payments in

an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate." *See* 11 U.S.C. § 362(d)(3)(B)(ii). "The court views relief under section 362(d)(3) to be mandatory where its provisions are to be strictly complied with." *Nationsbank, N.A. v. LDN Corp.* (*In re LDN*), 191 B.R. 320, 326-327 (Bankr. E.d. Va. 1996). As of September 2009, the date in which the Debtor initially defaulted on the Note, the Debtor's applicable nondefault contract rate of interest payments amount to approximately $156,827.08.[18] The Debtor's May adequate protection payment to CULS, which occurred ninety days after the commencement of the Bankruptcy Case, was $145,022.85, $10,000 short of the applicable nondefault interest payment. Tellingly, the Debtor's May adequate protection payment is also less than the Debtor's proposed $153,136.00 debt service payment to CULS under the Plan. Accordingly, the Debtor has not complied with section 362(d)(3) and the Motion should therefore be granted.

**C.     The Court should lift the automatic stay for cause pursuant to 11 U.S.C. §362(d)(1)**

33.     Section 362(d)(1) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including lack of adequate protection of an interest in property of such party in interest; or

11 U.S.C. § 362(d)(1). The statute does not define "cause" under Section 362(d)(1), so reviewing courts must determine whether cause exists on a case-by-case basis. *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998). "Cause is an intentionally broad and flexible concept, made so in order to permit the courts to respond in equity in inherently fact-sensitive situations." *In re Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988). When relief from the

---

[18]Petska Aff. ¶14.

automatic stay is sought, the party seeking relief has the initial burden to demonstrate cause for relief. *In re Fowler*, 259 B.R. 856, 858 (Bankr. E.D. Tex. 2001) (quoting *In re Bruce*, No. 00-14521-DWS, 2000 WL 968777, at *3 (Bankr. E.D. Pa. July 10, 2000)). After an initial showing of cause, the burden shifts to the debtor opposing the relief to establish the absence of cause. *In re Bruce*, 2000 WL 968777, at *3.

34. The phrase "adequate protection" as used in section 362(d)(1) is given further content by section 361 of the Bankruptcy Code, which reads in relevant part as follows:

> When adequate protection is required under section 362 . . . of this title of an interest of an entity in property, such adequate protection may be provided by --
>
> (3) granting such other relief . . . as will result in the realization by such entity of the <u>indubitable equivalent</u> of such entity's interest in such property.

11 U.S.C. § 361(emphasis added); *United Sav. Asso v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 370 (U.S. 1988).

35. Cause exists to grant CULS relief from the automatic stay under 11 U.S.C. § 362(d)(1) because CULS's interest in the Harbor Property is not adequately protected as the Debtor's financial condition has deteriorated post-petition and continues to deteriorate.[19] Furthermore, the Harbor Property is subject to a class action complaint of disability accommodations discrimination, captioned *Robert Patrick Sapp and Randy Snow v. Mariah Bay Development, Inc.* (the "<u>ADA Litigation</u>").[20] Upon information and belief, Mssrs. Sapp and Snow (the "<u>Plaintiffs</u>") have threatened to amend the ADA Complaint to include the Harbor Property commercial tenants. Should the Plaintiffs amend the ADA Complaint to include the commercial tenants, it is foreseeable that the tenants will abandon their leases, further depreciating the Debtor's asset and CULS's collateral.

---

[19] Petska Aff. ¶ 18.
[20] Petska Aff. ¶19; Ex. 14.

36.     Because the pending ADA Litigation threatens to further dilute CULS's collateral, CULS is entitled to relief from the automatic stay. *See United Sav. Asso v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 370 (U.S. 1988) ("It is common ground that the "interest in property" referred to by § 362(d)(1) includes the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; and that <u>that interest is not adequately protected if the security is depreciating during the term of the stay</u>.)(emphasis added); *see also In re East-West Assoc.*, 106 BR 767 (Bankr. S.D.N.Y. 1989) (stating that under 11 U.S.C. § 362(d)(1), secured creditor has right to receive protection for any decline in value of collateral during automatic stay); *In re Planned Systems, Inc.,* 78 BR 852 (Bankr. S.D. Ohio 1987) (noting that under 11 USCS § 362(d)(1), adequate protection includes protecting secured creditor from any decrease in value of secured creditor's interest in collateral caused by imposition of automatic stay).

**D.      The Court Should Lift The Automatic Stay Pursuant to Section 362(d)(2)**

37.     Section 362(d)(2) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying , or conditioning such stay—

…
(2) with respect to a stay of an act against property under subsection (a) of this section, if—

    (A) the debtor does not have any equity in such property; and

    (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).  Accordingly, in order to prevail pursuant to section 362(d)(2), CULS must show that the Harbor Property lacks equity and that the property is not necessary to an effective reorganization.  While CULS bears the burden of proof on the issue of equity in the

collateral, the Debtor bears the burden of proof on all other issues. *See In re W.B.S.S., L.P.*, 366 B.R. 629, 632 (Bankr. E.D. Tex. 2007 (C.J. Parker); 11 U.S.C. § 362(g).

### (iv) No Equity Exists in the Property

38. "Equity is the value of property in excess of all encumbrances against it." *In re McManus*, 30 F.3d 1491, 1994 WL 397944 at *1 (5th Cir. 1994) (*citing In re Sutton*, 904 F.2d 327, 329 (5th Cir. 1990) ("'Equity' as used in section 362(d) portends the difference between the value of the subject property and the encumbrances against it.") (citations omitted)).

39. According to the appraisal of the Property conducted by Mr. Gabe Hill, MAI, Certified General Appraiser, FirstService PGP Valuation. (the "Appraisal"), the current market value of the Harbor Property is $27,170,000. Because the total outstanding claims against the Harbor Property, as listed in Section "V" of the Disclosure Statement, are in excess of $29,490,474, the claims against the Harbor Property exceed the value of the Harbor Property by approximately $2,320,000. As evidenced by the value ascribed to the Harbor Property in the Appraisal, no equity exists in the Harbor Property. Accordingly, the stay should be lifted pursuant to section 362(d)(2).

### (v) The Property Is Not Necessary To An Effective Reorganization

40. As the Fifth Circuit has stated, "[t]he mere indispensability of the property to the debtor's survival and the debtor's hopes of reorganization are insufficient to justify continuation of the stay when reorganization is not reasonably possible." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs. (In re Timbers of Inwood Forest Assocs*.), 808 F.2d 363, 370-71 (5th Cir. 1987), aff'd, 484 U.S. 365 (1988). In other words, the fact that the Harbor Property represents the Debtor's sole asset and sole ability to generate income for its Plan is insufficient to carry the Debtor's burden of proving, by a preponderance of the evidence, that the Property is

necessary for an effective reorganization within a reasonable time. *See id.*; accord *In re W.B.S.S., L.P.*, 366 B.R. at 632.

### VI.  CONCLUSION

WHEREFORE, for the reasons set forth in the Motion, CULS requests that this Court enter an order terminating or modifying the automatic stay in the Bankruptcy Case, ordering that (a) CULS may commence and continue with enforcement of any and all rights it has in law or in equity as to the Harbor Property, including its right to foreclose its security interest in the Harbor Property, and (b) CULS may enforce any other rights and remedies it may have with respect to any of its collateral under its Loan Documents or under applicable law; and (c) for such other and further relief as is just and proper.

Dated June 23, 2010

          Respectfully submitted,
          FULBRIGHT & JAWORSKI L.L.P.

          By: */s/ Ryan E. Manns*
          Ryan E. Manns
          State Bar. No. 24041391
          Fulbright & Jaworski L.L.P.
          2200 Ross Ave., Ste. 2800
          Dallas, Texas 75201
          Telephone: (214) 855-8000
          Facsimile: (214) 855-8200

## **CERTIFICATE OF CONFERENCE**

     Counsel for Credit Union Liquidity Services, LLC has contacted counsel for the Debtor, Ms. Joyce Lindauer, regarding the Motion. Ms. Lindauer has informed undersigned counsel that the Debtor opposes the requested relief.

          */s/ Ryan E. Manns*
          Ryan E. Manns

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been served via first class United States Mail on June 23, 2010, on the parties below:

Mariah Bay Leasing Corporation
P.O. Box 369
Rockwall, TX 75087

Joyce W. Lindauer, Esq.
Joyce W. Lindauer, Attorney at Law
8140 Walnut Hill Lane, Ste. 301
Dallas, TX 75231

Jay W. Hurst, Esq.
Assistant Attorney General
Bankruptcy & Collections Div.
P.O. Box 12548
Austin, TX 78711-2548

Laurie Spindler Huffman, Esq.
Linebarger, Goggan, Blair & Sampson LLP
2323 Bryan Street, Ste. 1600
Dallas, TX 75201

Ms. Nancy S. Resnick
United States Bankruptcy Trustee
1100 Commerce Street
Room 976
Dallas, TX 75242-1496

            */s/ Ryan E. Manns*
            Ryan E. Manns